IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARMSTRONG DEVELOPMENT PROPERTIES, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) ) | Civil Action No. 13-1590<br>Judge Nora Barry Fischer |
| SG ELLISON, PETER G. SHIMKUS, BRANDON M. STEIN, WILLIAM R. MCDERMOTT, CHRISTOPHER CZYZ, ALESHA KARLSSON, FIRST STREET DEVELOPMENT, LLC, MARK MILLER, DAVID GRIEVE, and BRETT DEL VALLE, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

I. **INTRODUCTION**

This case arises out of the "West Coast Operations" of Butler, Pennsylvania-based real estate developer Plaintiff Armstrong Development Properties, Inc., ("ADPI"). (Docket No. 32). ADPI challenges the activities of six of its former employees in its offices in California and Arizona, Defendants, SG Ellison, Peter G. Shimkus, Brandon M. Stein, William R. McDermott, Christopher Czyz, and Alesha Karlsson, (collectively, the "Former Employees"). (*Id.* at ¶¶ 9-11, 15-22, 24). ADPI alleges that the Former Employees set up a competing business, Defendant First Street Development, LLC, ("First Street"), while still working at ADPI, and misappropriated ADPI's confidential and proprietary information which they took with them upon their departure, downloading files containing such materials from their computers and smartphones. (*Id.* at ¶¶ 9-11,

1

126-186). ADPI believes that the Former Employees and First Street are now using such information to unfairly compete with it for real estate development business in "West Coast" markets. (*Id.*). In addition to suing the Former Employees and First Street, ADPI has also sued three other individuals who are allegedly investors in First Street or business partners of the Former Employees in their new venture, Defendants David Grieve, Mark Miller and Brett Del Valle, (collectively "Non-Employees"), all of whom are residents of California. (*Id.* at ¶¶ 12, 27-28).

Defendants have filed three separate motions arguing that this case should be dismissed for lack of personal jurisdiction under Rule 12(b)(2), improper venue under Rule 12(b)(3), and/or for failure to state a claim under Rule 12(b)(6). (Docket Nos. 41, 44, 46). Alternatively, each of the Defendants maintains that this matter should be transferred to one of the United States District Courts in California pursuant to 28 U.S.C. § 1404(a). (*Id.*). Plaintiff opposes all of these Motions, which have now been fully and exhaustively briefed by all of the parties, with the Court having received responses, opposing briefs, replies and sur-replies as to each motion. (*See* Docket Nos. 53-59; 61-62; 65-67). Upon consideration of the parties' positions, and for the following reasons, Defendants' Motions [41], [44], [46] will be granted, in part and denied, in part. Specifically, Defendants' Motions to Transfer will be granted; the Motions challenging personal jurisdiction and venue in this District will be denied, as moot; and, the Motions to Dismiss for failure to state a claim will be denied, without prejudice, with leave to refile same in the transferee court, i.e., the United States District Court for the Eastern District of California.

## II. BACKGROUND

As noted, ADPI maintains its corporate headquarters in Butler, Pennsylvania and also has offices in California and Arizona, through which it conducts its "West Coast Operations" in the

states of California, Arizona, Utah, New Mexico, Nevada, Colorado, and Oklahoma. (Docket No. 32 at ¶ 8). ADPI admits that this case emanates from disputes with its Former Employees who previously worked in its "West Coast" offices. (*Id.* at ¶¶ 1, 6-7). Of the Former Employees, Defendants Ellison, Shimkus, Stein, Czyz and Karlsson worked out of ADPI's Phoenix, Arizona office while McDermott worked out of its Sacramento, California office. (*Id.* at ¶ 55). Defendants Ellison and Shimkus each held the title of Vice President with the company and supervised the other Former Employees. (*Id.* at ¶¶ 9-11). In their roles, Defendants Ellison and Shimkus reported directly to the President of ADPI, Doug Kyle, who works out of its Butler headquarters. (*Id.* at ¶¶ 9-11, 30). ADPI's Butler headquarters was involved with business strategy of the "West Coast" offices and also provided back office support to the employees at those locations, including certain information technology and human resources functions. (*Id.*). Accordingly, the Former Employees maintained significant contact with the Butler headquarters throughout their employment, particularly Ellison, who reported and corresponded with his direct supervisor, President Kyle, on a near daily basis. (*Id.* at ¶¶ 9-11, 30).

ADPI contends that the Former Employees improperly accessed and downloaded its confidential and/or proprietary information from their electronic devices while they were physically located at the "West Coast" offices but that this information was stored on ADPI's servers at the Butler headquarters. (*Id.* at ¶¶ 9-11, 30, 126-186). ADPI argues that these activities were undertaken for the purpose of damaging ADPI's "West Coast" operations and to permit their newly formed entity, First Street, to unfairly compete with ADPI for business in that area. (*Id.*). ADPI continues that Defendants Ellison and Shimkus also recruited the other Former Employees to join them in this new venture and that they have since participated in the unfair competition. (*Id.* at ¶ 11).

3

Specifically, ADPI believes that the Defendants' activities collectively have impaired its relationship with its primary client on the "West Coast," CVS Pharmacy, Inc., ("CVS"), for which it has acted as a real estate developer and built many CVS retail stores in that area. (*Id.* at ¶ 9-12). To this end, ADPI claims that CVS determined that ADPI was not able to compete for fifteen potential CVS development sites in, among other states, California and Arizona. (*Id.* at ¶¶ 187-209).

ADPI maintains that the Non-Employees facilitated the loss of the CVS business, particularly Miller, who was the former Regional Vice President of Real Estate for CVS and the person in charge of the relationship between ADPI and CVS, until he was terminated by CVS on September 26, 2013. (*Id.* at ¶¶ 12, 28). ADPI further alleges that the confidential and proprietary information taken by the Former Employees includes information which is subject to its Preferred Development Agreement with CVS, thereby causing ADPI to be in breach of such agreement.[1] (*Id.* at ¶¶ 57-81).

Through its Amended Complaint, ADPI seeks both injunctive relief and damages against the Former Employees but admits that it has separately initiated very similar claims against them in AAA arbitration in Pittsburgh pursuant to their respective employment agreements which expressly provide that "any claims" arising out of their employment would be subject to arbitration in Pittsburgh. (*Id.* at ¶¶ 2-6). Such employment agreements contain confidentiality clauses, which were allegedly breached, but do not contain any non-compete provisions. (Docket Nos. 38-40). ADPI seeks injunctive relief against the Former Employees for claims asserted against them during their employment[2] but has also advanced claims for money damages against the Former Employees "for their misconduct outside of their employment and, thus, beyond the scope of the Arbitration

---

[1] The Court has granted ADPI leave to present certain of its allegations and such agreement under seal given the alleged sensitivity of such information. (Docket No. 29).
[2] ADPI believes that this Court retains the authority to grant preliminary injunctive relief during the pendency of

4

including, but not limited to, misrepresenting themselves as ADPI in the relevant market." (Docket No. 32 at ¶ 6). As to First Street and the Non-Employees, ADPI brings claims for both damages and injunctive relief based on their having engaged in conspiratorial activities with the Former Employees and the harm they have allegedly caused to ADPI's "West Coast Operations." (Docket No. 32 at ¶¶ 6-7).

Defendants seek dismissal of this case and/or a transfer of venue to a District Court within California. (Docket Nos. 41, 44, 46). Only Non-Employee Defendant Miller specifies the District within California to which he would prefer such a transfer as he suggests that the case should be transferred to the Central District of California, near his home in the Los Angeles area. (Docket No. 45). First Street maintains offices in Phoenix, Arizona, within the District of Arizona and Sonoma, California, within the Northern District of California. (Docket No. 32 at ¶¶ 21-22). Of the Former Employees, only McDermott resides in California, while the others (Smikus, Ellison, Stein, Czyz, and Karlsson) live in Arizona. (*Id.* at ¶¶ 15-20). The Non-Employees, Miller, Grieve and Del Valle, reside in either the Central or Northern Districts of California. (*Id.* at ¶¶ 24, 27-28). Finally, aside from the Former Employees having previously worked in the "West Coast" Offices of Pennsylvania-based ADPI, it has adduced no evidence or even alleged that any of the Defendants have a legitimate personal or business connection to the Western District of Pennsylvania. (*See generally* Docket No. 32).

ADPI states that it has a strong preference for this case to remain in this District due to its headquarters being located here and the harm it allegedly felt within this District caused by Defendants' actions. (Docket Nos. 54, 56, 58). It also cites the ongoing AAA arbitration against the

---

such arbitration proceedings. (Docket No. 32 at ¶ 5).

5

Former Employees in the Pittsburgh area. (Docket No. 32 at ¶¶ 2-6). Yet, ADPI admits that neither First Street nor the Non-Employees are involved in the arbitration and also that its claims against the Former Employees for their activities during their employment at ADPI are limited to preliminary injunctive relief. (*Id.*). ADPI argues that its main witness in this action, President Kyle, works out of the Butler Office, but acknowledges that his duties include being the direct supervisor of all of the "West Coast Operations," including over the Former Employees. (*Id.* at ¶ 30). ADPI also maintains electronic records in Butler and that office provides back office support to the "West Coast" locations, but there is no evidence that the records could not be produced in another judicial District. (*Id.*). ADPI has not proposed an alternative district in the event of a transfer but, despite its loss of the Former Employees, it continues to operate offices in Sacramento, California, within the Eastern District of California and Phoenix, Arizona, within the District of Arizona. (*Id.* at ¶ 8).

In short, this case involves disputes between two real estate developers with competing offices within the same judicial District in Phoenix, Arizona, and across two separate judicial Districts in California, i.e., the Eastern and Northern Districts. Further, according to Google Maps, the opposing California offices of these entities in Sonoma and Sacramento are 72.8 miles apart and separated by an estimated drive time of a little over an hour on Interstate 80 ("I-80").[3] However, First Street's Sonoma office is located approximately 2,555 miles away from ADPI's headquarters in Butler, Pennsylvania, which, coincidentally, could be reached by driving across the country on I-80 for an estimated 37 hours.

---

[3] It is well settled that the Court may take judicial notice of geography and other Courts have used Google Maps to estimate distances between two established locations. *See Snyder v. Bertucci's Restaurant Group*, Civ. A. No. 12-5382, at *n.4 (E.D. Pa. Dec. 18, 2012) (citing *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 344 (1952)) (using Google Maps to estimate distance of 3.6 miles between the Federal Courthouses in Philadelphia, Pennsylvania and Camden, New Jersey); *see also Heide v. Seven Springs Farm, Inc.*, Civ. A. No. 08-126, 2009 WL 1346035, at *7 (W.D.

**III. PROCEDURAL HISTORY**

ADPI initiated this case by filing its Complaint against all of the Defendants on November 1, 2013. (Docket No. 1). Shortly thereafter, ADPI filed a Motion for Preliminary Injunction, (Docket No. 4), and Brief in Support, (Docket No. 5), to which Defendant Miller promptly responded by filing a Motion to Dismiss and Brief in Support, (Docket Nos. 24-25). ADPI next filed an Amended Complaint, (Docket No. 32), and a Motion for a Temporary Restraining Order, (Docket No. 30), without re-filing its previously submitted Motion for Preliminary Injunction. The Court entered an Order on December 23, 2013, denying ADPI's Motion for a Temporary Restraining Order, without prejudice, denying its Motion for Preliminary Injunction, as moot, and denying Defendant Miller's Motion to Dismiss, without prejudice. (Docket No. 37).

On January 3 and 4, 2014, Defendants filed three separate Motions to Dismiss ADPI's Amended Complaint and Briefs in Support, which are at issue in this Memorandum Opinion. (Docket Nos. 41-42; 44-47). Pursuant to the Court's Motions Practice Order, ADPI filed Responses and Briefs in Opposition to such Motions on January 31, 2014. (Docket Nos. 53-58). Defendants submitted Reply Briefs in support of their respective Motions on February 14, 2014. (Docket Nos. 59; 61-62). Finally, after receiving leave of Court, ADPI filed Sur-Reply Briefs in opposition to each of the Motions on February 24, 2014. (Docket Nos. 65-67).

The pending motions are now fully briefed and ripe for disposition.

**IV. RELEVANT LEGAL STANDARD**

As noted, Defendants have moved to dismiss this case for lack of personal jurisdiction, improper venue and failure to state a claim and, alternatively moved to transfer venue. (Docket Nos.

---

Pa. May 13, 2009) (Gibson, J) (taking judicial notice of distances from both Somerset and Johnstown to Pittsburgh).

41, 44, 46). "While the question of personal jurisdiction is typically decided in advance of venue, a court may proceed to the consideration of venue whenever there is sound justification for its doing so." *Centimark Corp. v. Saffold*, Civ. A. No. 07-342, 2007 WL 2317350, at *1 (W.D. Pa. Aug. 8, 2007) (Lancaster, J.) (citing *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180 (1979)). Courts have recognized that such a sound justification arises if the resolution of contested issues on personal jurisdiction is not in the interests of judicial economy due to the complexity of the issues raised and the Court finds that venue should more appropriately lie in another District. *See id.* Here, ADPI asserts that personal jurisdiction over many of the Defendants (particularly, the Non-Employees) is appropriate under the theory of "coconspirator jurisdiction" under Pennsylvania's long-arm statute and further suggests that limited discovery may be necessary to support such a theory.[4] (Docket Nos. 32 at ¶¶ 31-32; 54, 56, 58). However, the uncontested facts are such that even if this Court were to assume that the exercise of personal jurisdiction over these Defendants would be appropriate, the interests of justice require a transfer in this case.

It is well established that Defendants bear the burden of proof to demonstrate that a discretionary transfer of venue is appropriate and that this Court retains "broad discretion" to transfer venue when justice so requires. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995); *see also Ogundoju v. Attorney General of U.S.*, 390 F. App'x 134, n.2 (3d Cir. 2010).

**V. DISCUSSION**

Defendants seek a transfer to one of the District Courts in California under both 28 U.S.C. §§

---

[4] The Court notes that several federal district courts in Pennsylvania have applied the doctrine of coconspirator jurisdiction. *See, e.g., Goodson v. Maggi*, 797 F. Supp. 2d 604, 621 (W.D. Pa. 2011) (Lancaster, J.); *Aluminum Bahrain B.S.C. v. Dahdaleh*, Civ. A. No. 08-299, 2012 WL 5305169 (W.D. Pa. Oct. 25, 2012) (Ambrose, J.).

1404(a),[5] which applies if the Court determines that venue in this District is appropriate, and 1406(a),[6] which governs if the Court concludes that venue in this District is improper. (Docket Nos. 41-42; 59; 61-62). ADPI contests a transfer under either statute. (Docket Nos. 53-58; 65-67). In the interests of judicial economy, the Court focuses its inquiry on the discretionary transfer statute, § 1404(a), rather than addressing the parties' specific arguments regarding the contested issue of whether venue in this District is proper under § 1406(a), because the Court agrees with Defendants that the undisputed facts clearly demonstrate that a discretionary transfer is warranted, even if the Court accepts ADPI's position that venue appropriately lies in this District.

To determine whether to grant a motion to transfer venue under § 1404(a), the District Court weighs both the private and public interests set forth by the United States Court of Appeals for the Third Circuit in *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The relevant private interests include: (1) each party's forum preference; (2) where the claims arose; (3) the convenience of the parties; (4) the convenience of the witnesses; and (5) the location of the books and records. *Id.* The cited public interests include: (1) the enforceability of the judgment; (2) practical considerations of expediting trial and reducing costs; (3) administrative difficulties in the two fora due to court congestion; (4) the local interest in deciding local controversies; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law. *Id.* at 879–80. As noted above, "[t]he burden of establishing the need for transfer still rests with the movant," and "the plaintiff's choice of venue should not be lightly disturbed." *Id.* at 879.

---

[5] Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

[6] Section 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which

Before weighing the necessary *Jumara* factors, the Court briefly responds to ADPI's supporting citations to this Court's prior decisions denying discretionary transfers in *Dilmore v. Alion Science and Tech. Corp.*, Civ. A. No. 11-72, 2011 WL 1576021, at *8 (W.D. Pa. Apr. 2, 2011), *Carnegie Mellon Univ. ("CMU") v. Marvell Tech. Group, Ltd.*, Civ. A. No. 09-290, 2009 WL 3055300, at *3-4 (W.D. Pa. Sept. 21, 2009), and *Archinaco/Bracken LLC v. Dawson,* Civ. A. No. 13-917, 2013 WL 5410060, *3 (W.D. Pa. Sept. 25, 2013). The Court believes that the decisions in *Dilmore*, *CMU* and *Archinaco* are plainly distinguishable from the instant case, which involves ADPI's "West Coast Operations" and its alleged loss of at least fifteen CVS real estate development deals in Arizona, California and other "West Coast" markets due to Defendants' alleged tortious behavior. (Docket No. 32). Although ADPI argues in its briefs that it "felt the brunt of the harm in this District, as it is headquartered in Butler, Pennsylvania," that assertion is undermined by the repeated averments in the Amended Complaint which make clear that ADPI is truly seeking to recover for harm resulting from the losses sustained by its "West Coast Operations" and alleges only downstream harm sustained by ADPI in this District due to its headquarters being located here. (*Id.* at ¶¶ 10-11; 13; 33-35; 46; 52-81; 187-209; 227-228; 238; 245; 259-261; 289; 321). In stark contrast, the Court recalls that:

- *Dilmore v. Alion* involved an individual plaintiff, Mr. Dilmore, who lived in the Pittsburgh area and largely worked from his home for a Virginia-based former employer, Alion. *Dilmore v. Alion Science and Tech. Corp.*, 2011 WL 1576021, at *1. Mr. Dilmore was terminated from his position and sued Alion for age discrimination, alleging that he felt the harm from the dismissal in this District, where he both lived and worked. *Id.* at *5. Further, as an individual plaintiff, the costs of a transfer were much greater than that of the defendant business which had permitted Mr. Dilmore to work in this area over a lengthy period of time. *Id.* at *7-8. Thus, the motion to

---

it could have been brought." 28 U.S.C. § 1406(a).

transfer the case was denied. *Id.*

- *CMU v. Marvell* is an ongoing patent infringement case and the Court denied Marvell's motion to transfer it to the Northern District of California where Marvell is headquartered. *Carnegie Mellon Univ. v. Marvell Tech. Group*, Ltd., 2009 WL 3055300, at *2-4. In so holding, the Court found that, among other things, CMU professors created the patented technology in Pittsburgh through its Data Storage Systems Center at its main campus in Oakland. *Id.* The Court also found that the harm from the alleged patent infringement was largely sustained in this District, despite the fact that CMU has a branch campus near Marvell's headquarters in the Northern District of California. *Id.*

- Finally, *Archinaco/Bracken LLC v. Dawson* is a dispute between two law firms over the representation of a client in a FINRA arbitration claim. *Archinaco/Bracken*, 2013 WL 5410060, at *3. In that instance, the Court denied the transfer because, among other things, Archinaco demonstrated to the Court that the balance of the work performed on the FINRA arbitration file was completed by its attorneys in Pittsburgh and that the harm from the alleged interference with the contractual relationship by the California law firm was also felt here. *Id.*

For these reasons, the Court departs from its prior holdings in this instance but does so only after a careful evaluation of the private and public factors under *Jumara* and its determination that the interests of justice will be served by the transfer of this matter over ADPI's objections.

To this end, this Court's balance of the relevant private factors under *Jumara* suggests that a transfer to the Eastern District of California, where ADPI's Sacramento, California office is located, is appropriate. *Jumara*, 55 F.3d at 879; (*see also* Docket No. 32 at ¶¶ 52-55). While ADPI's forum preference of this District is given some weight, it is neither controlling nor lightly disturbed by the transfer because of ADPI's admissions that it operates offices in both California and Arizona and actively does business throughout the "West Coast." (*Id.* at ¶¶ 52-56). Further, the Court's transfer of this matter to the Eastern District of California, rather than the Central District of California,

11

which Defendant Miller proposed, permits ADPI to litigate this case in the forum closest to its Sacramento office.[7] (*Id.* at ¶ 54). Regarding the second factor, ADPI's claims initially arose from alleged conduct by Defendants which reached across a number of different jurisdictions including, Arizona, California and Pennsylvania, but the Court believes that the primary focus of such claims largely challenge Defendants' conduct directed to disturb ADPI's "West Coast Operations" and interfere with its development of CVS properties in Arizona and California. (Docket No. 32 at ¶¶ 10-11; 13; 33-35; 46; 52-81; 187-209; 227-228; 238; 245; 259-261; 289; 321). Next, the third and fourth factors, which consider the convenience of the parties and witnesses, strongly favor a transfer because all of the parties and non-parties are physically located in California and Arizona in some capacity, making the California court much more convenient for all involved. All Defendants reside in those states. (*Id.* at ¶¶ 15-24, 27-28). ADPI operates offices in both locales and its only identified witness, President Kyle, supervises such operations and all employees working there.[8] (*Id.* at ¶¶ 30,

---

[7] The Court also believes that a transfer to the District of Arizona, Phoenix Division, would be both appropriate and in the interests of justice because both ADPI and First Street maintain offices in the Phoenix area and a substantial part of the alleged harm caused by Defendants appears to have been in relation to the Former Employees' activities in ADPI's Phoenix office. *See Jumara*, 55 F.3d at 879; (*see also* Docket No. 32 at ¶¶ 52-53, 56). However, none of the parties have suggested that the case should be transferred to the District of Arizona and the Court declines to do so *sua sponte* when another appropriate venue for this lawsuit is available in the Eastern District of California, where ADPI maintains an office.

[8] The Court notes that ADPI suggests that its ongoing arbitration in the Pittsburgh area against the Former Employees undermines their position that this District is inconvenient. This Court disagrees. The location of the arbitration is controlled by the arbitration clause in the employment agreements, which specifies that any arbitration between ADPI and the Former Employees would take place in Pittsburgh. (Docket Nos. 38-40). However, there are no forum selection clauses in the agreements specifying that the Former Employees agreed to litigate in the courts in this District or the Commonwealth of Pennsylvania. (*Id.*). Because these are form agreements which were obviously drafted by ADPI and entered into at various times between the individual employees and ADPI, it could have inserted forum selection clauses into the agreements in the first instance if it truly desired to only litigate with its employees here. (*Id.*). Finally, ADPI's citation to this Court's decision in *Silec Cable S.A.S. v. Alcoa Fjardaal SF*, Civ. A. No. 12-1392, 2012 WL 5906535 (W.D. Pa. Nov. 26, 2012), for the proposition that the selection of Pittsburgh in the arbitration clause demonstrates that the Former Employees consented to the personal jurisdiction of this Court is unpersuasive. From this Court's view, that decision stands only for a much narrower principle that a party to such an arbitration agreement necessarily consents to the personal jurisdiction of the District Court nearest to the stated location of the arbitration for cases arising out of the parties' arbitration, such as a motion to compel arbitration and/or to enforce an arbitration award. *See Silec Cable*, 2012 WL 5906535, at *11-12. Here, there is no indication in the employment agreements that the

54, 55). Similarly, all of the individual non-party witnesses named by ADPI in its Amended Complaint as having some involvement in this matter (Devon Thomas and Kelly Allred) are likewise located on the "West Coast" and CVS is based in Rhode Island but operates throughout the fifty states of the union. (*Id.* at ¶¶ 25-26). Finally, the fifth factor, the location of the books and records, neither favors nor disfavors a transfer because the evidence in this case could more than likely be produced electronically in either forum. *See Archinaco/Bracken*, 2013 WL 5410060, at *7. Indeed, according to ADPI, the alleged confidential and proprietary information which was misappropriated by the Former Employees was electronically accessed from their physical locations in ADPI's "West Coast" offices although such files are stored by ADPI on its Pittsburgh-based servers. (*Id.* at ¶¶ 9-11, 126-186). On balance, all of the private factors either favor a transfer of venue to the Eastern District of California or are neutral. *See Jumara*, 55 F.3d at 879.

Next, the Court further believes that a proper weighing of the relevant public factors under *Jumara* likewise supports a transfer. *Id.* In this Court's estimation, the most relevant public factor is that local courts have inherent interests in presiding over local controversies and this case involves competing businesses litigating over potential real estate development deals of commercial properties in various "West Coast" markets. *Id.* Again, ADPI pleads that the balance of its claims do not arise out of the employment of its Former Employees, which would be covered by the employment agreements, and thereby seeks to litigate claims outside the scope of the ongoing arbitration. (Docket No. 32). Since ADPI operates throughout these "West Coast" markets and employs individuals in California and Arizona, it should fully expect to litigate disputes which arise from these parts of its operations in "West Coast" fora. *See Strategic Energy, LLC v. Agrifos*, Civ.

---

parties agreed to litigate the present disputes, many of which are outside the scope of the arbitration which is concurrently

A. No. 06-1100, 2006 WL 3489967, at *2 (W.D. Pa. Dec. 4, 2006) (Hardiman, J.) (holding that lawsuit brought by Pittsburgh-based electricity company to collect on electricity debt of Texas based-defendant should be transferred to a district court in Texas, where defendant was based because the electricity company purposefully availed itself to do business in the Texas market). Further, the scope of ADPI's case seeks not only monetary damages, but prospective injunctive relief, and any judgment in ADPI's favor granting such injunctive relief enjoining Defendants' future conduct would need to be enforced against Defendants in the locations where they reside and a local court would be better able to monitor compliance with any such injunction. *See Jumara*, 55 F.3d at 879. Additionally, ADPI's state law claims will require a significant choice of law analysis and it appears likely that such claims could result in the application of either California or Arizona law.[9] *Id.* All of these public factors favor the Court's transfer. In contrast, the Court acknowledges that the transferee court in California annually processes more cases than this District and the statistics produced by the Administrative Office of the United States Courts show that it may generally have a more congested docket, *see Archinaco/Bracken* 2013 WL 5410060, at *8,[10] but this finding is

---

taking place in Pittsburgh.

[9] The Court notes that the employment agreements contain a choice of law clause, citing Pennsylvania law as controlling. (Docket Nos. 38-40). However, ADPI explicitly pleads in its Amended Complaint that it is asserting causes of action against the Former Employees "for their misconduct outside of their employment and, thus, beyond the scope of the Arbitration including, but not limited to, misrepresenting themselves as ADPI in the relevant market." (Docket No. 32 at ¶ 6). It also has brought claims against First Street and the Non-Employees which are not parties to any such agreements with ADPI. (*Id.* at ¶¶ 12, 27-28). Accordingly, it is not clear that Pennsylvania law would govern the state law claims which are outside the scope of the employment agreements. The Court defers to the transferee court to decide these matters, which are likely to be contested by the parties.

[10] According to the Federal Court Management Statistics, the Western District of Pennsylvania had 3,366 filed cases before ten District Judges for an average of 275 cases per Judge and a "weighted filing" score of 317 in the twelve months ending December 31, 2013. *See Federal Court Management Statistics*, available at: http://www.uscourts.gov/Statistics/FederalCourt ManagementStatistics.aspx (last visited 4/14/14). However, this Bench is presently operating with three empty district judge seats that do not appear to be fully borne out in the present statistics and, to this Court's knowledge, no judicial appointments to those seats appear to be forthcoming in the near future. By comparison, the Eastern District of California had 5,971 filed cases before six District Judges for an average of 995 cases per Judge and a "weighted filing" score of 909 during the same period. *Id.* The Court further notes that the Eastern

insufficient to outweigh the other public factors. Accordingly, the Court holds that weighing the public *Jumara* factors also supports a transfer. *See Jumara*, 55 F.3d at 879.

For these reasons, the Court finds that the interests of justice will be furthered by the transfer of this case to the United States District Court for the Eastern District of California. *See* 28 U.S.C. § 1404(a). Moreover, a transfer of this matter to that forum will promote the "just, speedy, and inexpensive determination of [these] proceeding[s]," FED. R. CIV. P. 1, while the continued litigation of the parties' disputes in this District would unnecessarily increase costs to all involved by requiring out-of-state Defendants to appear in this District to defend claims that are based on facts which largely occurred on the "West Coast."

### VI. CONCLUSION

Based on the foregoing, Defendants' Motions [41], [44], [46] are granted, in part, and denied, in part. Said Motions are granted to the extent that Defendants seek a transfer of this matter pursuant to 28 U.S.C. § 1404(a). Said Motions are denied, as moot, insofar as Defendants seek dismissal of ADPI's Amended Complaint for lack of personal jurisdiction or improper venue, and denied, without prejudice, to the extent they seek dismissal for failure to state a claim. An appropriate Order transferring this case to the United States District Court for the Eastern District of California follows.

            *s/Nora Barry Fischer*
            Nora Barry Fischer
            United States District Judge

Date: April 14, 2014

cc/ecf: All counsel of record
    Clerk of Court, United States District Court for the Eastern District of California

---

District of California has 15 United States Magistrate Judges while this Court has 6, including one part time Magistrate Judge in the Johnstown Division and one recalled Magistrate Judge in the Pittsburgh Division. *Compare* http://www.caed.uscourts.gov/caednew/index.cfm/judges/all-judges/ (last visited 4/14/14); *with* http://www.pawd.uscourts.gov/Pages/chamber.htm (last visited 4/14/14).